IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ASSURANCE COMPANY OF AMERICA, individually and as subrogee of its insured, Coastal Builders, Inc. | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Civil Action No.: 1:10-CV-112-CG-B |
| AMERISURE MUTUAL INSURANCE COMPANY | ) ) ) |
| Defendant. | ) |

## AMERISURE'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

COMES NOW, Amerisure Mutual Insurance Company and files its brief in support of its Motion for Summary Judgment filed contemporaneously herewith as follows:

## I.    INTRODUCTION

In a perfect world, where charity abounds, contractors being sued for faulty construction would have numerous CGL insurers all agreeing that the litigation is covered under their policies. If that were the case Plaintiff's Complaint seeking a pro rata share from Amerisure would seem fair. But here, in reality, only Plaintiff found coverage for CBI under its policy and consequently chose to pay for settlement of the claims against CBI in the two underlying actions. Plaintiff now

seeks contribution from Amerisure as a subrogee of CBI because Amerisure did not pitch in to the settlement.

The problem is that this perfect-world-scenario cannot play out here because CBI was never entitled to coverage under its Amerisure policy for the claims made against it in the two underlying actions.  So, since CBI was never entitled to coverage under its Amerisure policy for the two underlying lawsuits, Plaintiff cannot now force Amerisure to contribute to settlements it voluntarily paid to resolve them. As CBI's subrogee, Plaintiff is not entitled to any greater right than CBI would have under the Amerisure policy. *Home Ins. Co. v. Stuart-McCorkle, Inc.*, 291 Ala. 601, 607, 285 So. 2d 468, 472 (1973)(a subrogee can acquire no greater rights than those possessed by the principal whose rights he asserts.) Therefore, as set forth on multiple grounds below, Amerisure is entitled to Summary Judgment.

## II.    STATEMENT OF UNDISPUTED FACTS

As its statement of facts in support of its Motion for Summary Judgment, Amerisure adopts by reference its Statement of Undisputed Facts and Conclusions of Law filed contemporaneously herewith.

## III.    SUMMARY JUDGMENT STANDARD

In deciding a Motion for Summary Judgment "'the judge's function is not himself to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial.... [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.... If the evidence is merely colorable ... or is not significantly probative,... summary judgment may be granted.'" *Tidd v. Walmart Stores, Inc.*, 757 F. Supp. 1322, 1324 (N.D. Ala. 1991) *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202, 212 (1986). Here, the evidence presented by Plaintiff is barely colorable, at best, and does not create a genuine issue of material fact. Therefore, Amerisure is entitled to judgment as a matter of law.

### IV.   THE BURDEN IS ON PLAINTIFF, NOT AMERISURE, TO PROVE COVERAGE.

Alabama law generally imposes the burden of proof on policy coverage issues on the insured, while only the burden of proving applicability of a policy exclusion rests with the insurer. *Compare Jordan v. National Acc. Ins. Underwriters Inc.*, 922 F.2d 732, 735 (11th Cir. 1991) ("Under Alabama law the general rule is that the insured bears the burden of proving coverage.") *with Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 12 (Ala. 2001) ("In general, the insurer bears the burden of proving the applicability of any policy exclusion."). *See also Pennsylvania Nat. Mut. Cas. Ins. Co. v. Roberts Bros., Inc.*, 550 F.Supp.2d 1295, 1303 (S.D.Ala. 2008) *and Thorn v. American States Ins. Co.* 266 F.Supp.2d 1346, 1349 (M.D.Ala. 2002) (both holding that liability insurers owed

no duty to defend insureds under the subject CGL policies).  Therefore, the <u>burden is on the plaintiff</u> to show that the underlying settlements would be covered under the Amerisure policy.  In other words, Amerisure has to prove nothing to prevail on this motion.  Rather, the entire burden of proving coverage rests on the plaintiff.  Because the underlying claims focus solely on faulty workmanship, and faulty workmanship is not covered by CGLs in Alabama (and a majority of states), plaintiff cannot meet its burden and Amerisure is entitled to summary judgment.

Of course, Amerisure bears the burden of proving the applicability of any policy exclusion, *see U .S. Fidelity & Guar. Co. v. Armstrong,* 479 So. 2d 1164, 1168 (Ala. 1985).  An ambiguous insurance policy must be construed liberally in favor of the insured, and exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured.  *Altiere v. Blue Cross and Blue Shield of Alabama,* 551 So. 2d 290, 292 (Ala. 1989).  However, if the policy is not ambiguous the insurance contract must be enforced as written, and courts should not defeat express provisions in a policy.  *Id.*  There are several exclusions set forth below that squarely apply here and further warrant summary judgment in favor of Amerisure.

## V.    ARGUMENT

There is no coverage for CBI under Amerisure's policy for the Four Winds or Clearwater lawsuits for the following reasons:

4

## A. CBI breached its policy with Amerisure by not giving Amerisure timely notice of the Four Winds and Clearwater lawsuits. So there is no coverage for CBI's (and now, consequently, Plaintiff's) claims.

It's hard to imagine a more extreme scenario for a late notice defense than what we have here. It is an undisputed fact in this lawsuit that Amerisure was not notified of the Four Winds lawsuit (filed on May 4, 2004) until May 23, 2007. That's a delay of over three years. It is also an undisputed fact in this lawsuit that Amerisure was not notified of the Clearwater lawsuit (filed on March 26, 2003) until July 19, 2007. That's a delay of over four years.

Amerisure's policy requires the insured to give Amerisure notice of the occurrence "as soon as practicable." The language of Amerisure's policy is set forth below:

### SECTION IV -- COMMERCIAL GENERAL LIABILITY CONDITIONS

#### 2. DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM, OR SUIT

> A. YOU MUST SEE TO IT THAT WE ARE NOTIFIED AS SOON AS PRACTICABLE OF AN "OCCURRENCE" OR AN OFFENSE WHICH MAY RESULT IN A CLAIM. TO THE EXTENT POSSIBLE . . . .

Alabama Courts have interpreted the phrase "as soon as practicable" to mean that notice must be given within a reasonable time in view of the facts and circumstances of the case. *See Pinson Truck Equipment Company, Inc. v. Gulf American Fire & Casualty Company, Inc.*, 388 So. 2d 955 (Ala. 1980). Further, the Alabama Supreme Court repeatedly held that an insurer need not plead or prove prejudice as a condition for a finding of late notice as a bar to coverage. *See,*

*e.g., Correll v. Fireman's Fund Ins. Companies,* 529 So.2d 1006, 1008-1009 (Ala.1988) (holding 'the plaintiffs here can take nothing from the absence of the burden upon the insurance company to prove prejudice'); *State Farm Mutual Automobile Ins. Co. v. Burgess,* 474 So.2d 634, 636 (Ala.1985) (stating that where liability coverage is involved, prejudice to the insurer does not 'bear on the reasonableness of delay'); *Big Three Motors, Inc. v. Employers Insurance Co. of Alabama,* 449 So.2d 1232 (Ala.1984) (indicating that '[t]he adoption of a rule requiring the insurer to show prejudice as a factor in determining reasonableness [has been] rejected'). Here, there is no reason for the delay- apparently CBI and Plaintiff did not think it was important to give Amerisure a chance to protect its rights. And, as for the length of the delay, 3 and 4 years is an eternity when litigation is pending and progressing against an insured.

Pursuant to Alabama law, when a primary insurance policy requires notice "as soon as practicable" or "immediately," the insured is required to give notice " 'within a reasonable time' in view of all the facts and circumstances of the case," and the insured's failure to do so releases the insurer from providing coverage. *Southern Guar. Ins. Co. v. Thomas,* 334 So.2d 879, 882-83 (Ala.1976); *Pharr v. Cont'l Cas. Co.,* 429 So.2d 1018, 1019 (Ala.1983) ("The terms 'as soon as practicable' and 'immediately' ... have been generally construed to mean that notice must be given within a reasonable time in view of the facts and

6

circumstances of the case."). The reasonableness of the delay is a question of fact for the jury "[w]here facts are disputed or where conflicting inferences may reasonably be drawn from the evidence." *Thomas,* 334 So.2d at 882. On the other hand, if the "'insured fails to show a reasonable excuse or the existence of circumstances which would justify a protracted delay,' " the court should find as a matter of law that there has been a breach of the notice provision of the policy. *Id.* at 882-83 (emphasis supplied).

In *Thomas,* the Supreme Court of Alabama rejected the insured's argument that "the absence of prejudice to the insurer from the delay" is a material consideration. *Id.* at 883. The court explained, that pursuant to its precedent, "whether the insurer was prejudiced by the delay is immaterial to a determination of the reasonableness of the delay where the giving of reasonably timely notice is expressly made a condition precedent to any action against the insurer," as in the case before it. *Id.* at 883. The Supreme Court of Alabama, therefore, concluded that only two factors bear on the issue of reasonableness: "the Length of the delay and the Reasons for the delay." *Id.* In that case, the determinative issue was "whether the insured's excuses, offered for his **six-month delay** in giving notice to his insurer, [were] reasonable." *Id.* at 883 (emphasis supplied). The court concluded that each of the reasons offered by the insured were insufficient to

7

justify the inordinate delay and that, thus, "the delay was unreasonable as a matter of law." *Id.* at 883-885.

*Thomas* does not stand alone. Other Alabama opinions have relied on *Thomas* to deny coverage at the summary judgment stage based upon late notice. *See Pharr,* 429 So.2d at 1018-20 (insured's **eight-month delay in notifying insurer after having received service of complaint was unreasonable** where there was no evidence of any excuse for the delay); *B & M Homes, Inc. v. Am. Liberty Ins. Co.,* 356 So.2d 1195, 1195-96 (Ala.1978) (insured's failure to notify insurer of suit against insured for **seven months after receipt of service of complaint was unreasonable as a matter of law** where a condition precedent to coverage was timely notice of the claim or lawsuit and insured offered no excuse for delay). CBI's and Plaintiff's 3 and 4 year delay in notifying Amerisure of these claims is inexcusable. And it is precisely why the policy requires notice "as soon as practicable" in order for coverage to apply. Since the delay here is unreasonable under Alabama law, Amerisure is entitled to Summary Judgment.

**B.    IT IS UNDISPUTED THAT CBI, PRIOR TO 2002, KNEW OF CLAIMS THAT ITS FAULTY CONSTRUCTION CAUSED DAMAGE TO THE FOUR WINDS AND CLEARWATER BUILDINGS. THE AMERISURE POLICY DID NOT TAKE EFFECT UNTIL 2002. SO AMERISURE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE POLICY'S "KNOWN-LOSS EXCLUSION" EXPRESSLY EXCLUDES THE PREEXISTING DAMAGE FROM COVERAGE.**

The Amerisure policy under **SECTION I – COVERAGES Coverage A. 1.**, which defines the parameters of coverage and is commonly referred to as the "known-loss exclusion," states that there is coverage only if:

      b.    This insurance applies to "bodily harm" and "property damage" **only if**:

            (3)    **Prior to the policy period, no insured** listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, **knew that the "bodily injury" or "property damage" had occurred, in whole, or in part.** **If such a listed insured** or authorized "employee **knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.**

      c.    "Bodily injury" or "property damage" which occurs during the policy period and **was not, prior to the policy period, known to have occurred by any insured** listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

      d.    **"Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured** listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

            (1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

            (2)    **Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or**

            (3)    **Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.**

(Emphasis added).

    The policy language does a thorough, crystal-clear job of excluding any property damage claim that was known to the insured prior to Amerisure's policy

period. Here, Amerisure began insuring CBI in November 2002. And it is undisputed that CBI's owner, John Case, informed Amerisure on August 21, 2007 that construction on the Four Winds Project was completed by the year 2000. Mr. Case also informed Amerisure on that day that he knew of the complaints but just never considered them to be "anything" until suit was filed in March 2004. Also on August 21, 2007 Mr. Case discussed the Clearwater Project with Amerisure and said that the Clearwater Project was completed in 1998 or 1999 and he knew of problems within 2-3 years after completion.

Since it is established that CBI had knowledge of the Four Winds and Clearwater claims prior to Amerisure's genesis of coverage on November 1, 2002, the only question is whether Amerisure's "known-loss" provision is enforceable. It is. General rules of contract law govern an insurance contract. *Lamberts v. Coregis Ins. Co., Inc.* 950 So. 2d 1156, 1161 (Ala. 2006) (quoting *Safeway Ins. Co. of Ala., Inc. v. Herrera,* 912 So.2d 1140, 1143 (Ala.2005)). Thus, a court must enforce the policy as written if the terms are unambiguous and whether a provision is ambiguous is a question of law. *Id.* "A term in a contract is ambiguous only if, when given the context, the term can reasonably be open to different interpretations by people of ordinary intelligence." *Id.* at 1162.

Here, Amerisure's "known loss" provision is unambiguous and enforceable because an identical "known loss" provision was recently examined by the Middle

10

District this past summer and found to be unambiguous; thus, coverage was denied

because the insured knew of the damage prior to the beginning of coverage.

*Harleysville Mut. Ins. Co. v. Dapper, LLC*, 2:09-CV-794-TFM, 2010 WL

2925779, \*7 (M.D. Ala. July 21, 2010) ("Turning to the unambiguous policy

terms, Dapper is deemed to have known about the property damage when it

learned that it had occurred or had begun to occur.")  The *Dapper* Court explained

that it must:

> "strictly enforce unambiguous clauses when they work against the
> insured-i.e. Dapper. An insurance company relies upon representations
> by the customer when making its decisions on whether to insure a
> property. Full disclosure shields legitimate policy holders from premium
> increases which would follow when benefits are paid to those who
> deliberately hid pertinent matters from the insurer. While the court
> credits Dapper that it had no nefarious motives in keeping the potential
> loss from Harleysville, the important matter is that Dapper, under the
> law, knew of the potential for a claim and chose not to tell Harleysville
> about the claim or potential claim when Harleysville explicitly put the
> burden to report squarely upon Dapper. The Court further credits that
> Dapper did not change its insurance to Harleysville because of the issues
> with Fantail. The reality is that while there was no nefarious intent by
> Palmer/Dapper, no good reason in law or equity exists to shield Dapper
> from the unambiguous known-loss provision of the insurance contract.
> To hold otherwise would lead to unnecessary litigation in other cases.

> Based on all the above, the Court finds that the "known-loss"
> endorsement in the Policy applies. As the property damage at issue
> manifested prior to the Policies' inception, Harleysville is relived of any
> duty to defend and entitled to summary judgment in its favor."

*Id.* at \*8.  The *Dapper* decision falls perfectly in line with other Alabama decisions

excluding coverage for damage manifesting outside the subject policy period. *See*

*Liberty Mut. Ins. Co. v. Wheelwright Trucking Co., Inc.*, 851 So. 2d 466, 483 (Ala. 2002)(an "occurrence" under an insurance policy takes place at the time actual damage manifests and an insurer owes no coverage if actual damage manifests outside its policy period.); and *U.S. Fid. & Guar. Co. v. Warwick Dev. Co., Inc.*, 446 So. 2d 1021, 1024 (Ala. 1984)( "as a general rule the time of an 'occurrence' of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time the complaining party was actually damaged.") In short, since the actual damage took place prior to Amerisure's policy period, the damage at issue in the underlying lawsuits is expressly excluded by Amerisure's unambiguous policy language.

It is of no consequence, and the analysis does not change, if there was subsequent water damage to the buildings during Amersiure's policy periods because that damage stemmed from the same faulty construction which caused the prior problems. In other words, it would all be one "occurrence"[1] not multiple "occurrences." Alabama law requires us to look to the proximate cause of the damages in interpreting an "occurrence." *Home Indem. Co. v. City of Mobile*, 749 F.2d 659, 663 (11th Cir. 1984)("under Alabama law, the "occurrence" to which this policy refers is the 'events or incidents for which the [insured builder] is liable;' that is, a single 'occurrence' encompasses all damage proximately resulting

---

[1] Amerisure does not concede that CBI's faulty construction is an "occurrence" as defined under the policy. But assumes it, hypothetically, to illustrate the applicability of the "known loss" exclusion.

from each incident or series of incidents of negligence which create the [insured builder's] liability for flooding.")   In *City of Mobile*, the City was sued for defectively constructing a drainage system that, when combined with three subsequent rainfalls spaced out over a year, caused three subsequent manifestations of flooding damage to private residences.   *Id.* at 660-661.   The *City of Mobile* Court explained:

"occurrence" does not refer to the flooding damages sustained by each individual property, since that interpretation improperly focuses on the *effects* of the events leading to liability, rather than on the *cause* of those events.

We hold that each discrete act or omission, or series of acts or omissions, on the part of the City of Mobile which caused water to flood and damage properties instead of draining properly is a single "occurrence" within the terms of the insurance policy.

*Id.* at 663.   Therefore, in determining if there are multiple "occurrences" the inquiry centers on the faulty construction that causes the damage.   Not just that there were separate manifestations of the same damage.   Nevertheless, here, determining that the "occurrence" took place prior to Amerisure's policy period is even simpler.   All the claims against CBI stemmed from its original faulty construction that took place prior to Amerisure's 2002 policy period.   So the claims against CBI are excluded by Amerisure's known-loss exclusion.   The exclusion expressly excludes <u>all</u> damage if the insured "**knew that the ....**

'property damage' had occurred, in whole, or in part." And if "such a listed insured …… knew, prior to the policy period, that the …..'property damage' occurred, then any continuation, change or resumption of such ….. 'property damage' during or after the policy period will be deemed to have been known prior to the policy period."

Here, Summary Judgment could not be more appropriate. The facts: CBI knew about the damage prior to the Amerisure policy period. The policy: "known-loss" provision excludes <u>any</u> known damage from coverage. The law: the policy's "known-loss" provision is unambiguous and enforceable. The result: Summary Judgment in favor of Amerisure because there is no coverage.

### C.   AMERISURE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE ARE NO CLAIMS IN THE UNDERLYING LAWSUITS THAT ALLEGE AN "OCCURRENCE" UNDER THE AMERISURE POLICY. MORE SPECIFICALLY, THE UNDERLYING LAWSUITS ARE BASED ON FAULTY CONSTRUCTION PERFORMED BY CBI WHICH DOES NOT CONSTITUTE AN "OCCURRENCE" UNDER ALABAMA LAW.

The sole mechanism of injury in the Four Winds and Clearwater lawsuits is faulty workmanship. No matter how you slice it, the lawsuits boil down to inadequate work product resulting in litigation. And faulty workmanship is not an "occurrence" under Amerisure's policy. So CBI has no coverage for the Four Winds or Clearwater lawsuits under its policy with Amerisure. Therefore, Amerisure is entitled to summary judgment as explained in more detail below:

**1. Alabama Law holds that Faulty Construction is not an "occurrence" under a CGL.**

    a.    THE *USF&G V. WARWICK DEVELOPMENT CO. CASE*

In Alabama, claims for faulty construction resulting only in damage to the work itself do not constitute an "occurrence" under a CGL policy. *See USF&G v. Warwick Development Co.,* 446 So. 2d 1021, 1023 (Ala. 1984). In *Warwick,* the Plaintiffs purchased a home that had been built by Warwick Development Co., the contractor/seller of the home. Warwick filed a third party complaint against its comprehensive general liability carrier, USF&G, after it was sued for construction defects in the plaintiff's home. USF&G filed a motion for summary judgment claiming that no coverage existed for the claims of unworkman-like construction and misrepresentations by Warwick. The trial court denied USF&G's motion for summary judgment so USF&G appealed. The Alabama Supreme Court reversed the trial court, finding that claims for faulty workmanship and misrepresentation did not constitute an "occurrence" as defined under the USF&G policy. *Warwick,* at 1023. The definition of "occurrence" used in the USF&G policy was actually broader than the one used in the Amerisure policy for Structural Masonry. In determining that faulty construction is not an "occurrence" in Alabama, the Court stated:

> "The first issue is whether USF&G's policy provided coverage for alleged faulty workmanship and non-complying materials in the construction of Plaintiffs' residence when the alleged damage was

confined to the residence itself. USF&G contends that the policy affords no coverage because (1) no insurable loss occurred within the policy period; and (2) damages to the work of the insured attributable to fault workmanship are expressly excluded from coverage. After a review of the record and the policy involved, we conclude that the trial court incorrectly held that USF&G was bound under its policy of insurance to Warwick. **In our view, there was no "occurrence" within the definition of "occurrence" found in the pertinent policy provisions.** The policy clearly states that the company will pay damages for: (A). bodily injury or (B). property damage to which this insurance applies caused by an "occurrence." The USF&G policy defines "occurrence" as "an accident including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." For a contrary holding under the circumstances amounting to "occurrence" *see Moss v. Champion Ins. Co.*, 442 So. 2d 26 (Ala. 1983).

*Id.* at 1023. (Emphasis added).

### b. THE *MOSS V. CHAMPION* INS. CO. CASE

In *Moss v. Champion* Ins. Co., 442 So. 2d 26 (Ala. 1983), the Court found that property damage to something *other* than the insured's work did constitute an occurrence. However, unlike *Warwick* and the underling lawsuits at bar, in *Moss* it was undisputed that there was property damage to something *other* than the insured's work. Here, the only damage complained of is to CBI's own work (the buildings themselves) due to faulty workmanship- not because of any "accident." Therefore, the *Moss* case is not as on point as *Warwick.*

c.    THE USF&G V. BONITZ CASE

The Alabama Supreme Court reached a similar decision in *USF&G v. Bonitz*, 424 So. 2d 569 (Ala. 1982). In *Bonitz*, the insured was hired to build a roof on a gym for the City of Midfield as part of a larger school construction project. *Id.* Part of the job was subcontracted. *Id.* After completion of the roof, it began to leak causing damage to the ceilings, walls, carpets, and the gym floor. *Id.,* at 573. The Court determined coverage existed because there was property damage to something other than the insured's work. *Id.* Had there been damage only to the insured's work, there would have been no occurrence. *Id.*, at 573-74. In this case, however, the only damage is to CBI's work itself. Therefore, there was no occurrence and no coverage. *See* also *Garrett v. Auto-Owners Ins. Co.*, 689 So. 2d 179 (Ala. Ct. App. 1997) and *Berry v. South Carolina Ins. Co.*, 495 So. 2d 511, 513 (Ala. 1986)(trial court granted insurance carrier's motion and the Alabama Supreme Court affirmed, noting that there was no allegation of damage to anything other than the insured's work.)

In sum, under Alabama law, claims for faulty construction resulting only in damage to the work itself do not constitute an "occurrence" under a CGL policy. *See USF&G v. Warwick Development Co.,* 446 So. 2d 1021, 1023 (Ala. 1984). That is the situation here. So Amerisure is entitled to summary judgment.

2.      **Other Courts Have Analyzed the Amerisure Policy and Determined No Coverage Exists for Construction Defect Claims.**

Other Alabama courts have held that faulty construction is not an occurrence under the Amerisure policy. In *Amerisure Mutual Ins. Co. v. McWhorter & Co.*, 2:05-CV-00508-JEO (N.D. Ala. 2006), Judge Ott from the Northern District of Alabama granted summary judgment to Amerisure for a declaratory judgment action.    *See* opinion attached as *Exhibit* "4" to Amerisure's evidentiary submissions filed contemporaneously herewith.  Significantly, Judge Ott relies on the *Warwick* case as well as *Berry* and *Bonitz* to conclude that "Amerisure has no duty to defend a claim for breach of contract for faulty workmanship because it is not an 'occurrence' as defined by the policy." *Id.*. at 546.   Likewise, Judge Rodgers from Jefferson County, Alabama Circuit Court (Bessemer Division) held in 2010 that faulty workmanship is not an "occurrence" by analyzing identical Amerisure policy language and similar facts. *See* opinion attached as Exhibit "5" to Amerisure's evidentiary submissions filed contemporaneously herewith.

Other courts have reached the same conclusion about an identical Amerisure policy.

In *Production Systems v. Amerisure Insurance Co.*, 605 S.E.2d 663 (N.C. Ct. App. 2004), the North Carolina Court of Appeals stated that damage caused by faulty workmanship to the insured's own work did not constitute property damage that would be covered under the Amerisure policy. *Production Systems*, at 667.

The work at issue in *Production Systems* had been completed prior to the alleged damage. The *Production Systems* case was cited with approval by the 4th Circuit Court of Appeals in *Traveler's Indemnity v. Miller Building Corp.*, 2007 WL 685230, 268 (4th Cir. 2007). In 2008, the U.S. Federal Court for the Eastern District of North Carolina found that there was no coverage for construction defect claims under an Amerisure policy in *Breezewood of Wilmington Condominium Homeowner's Association v. Amerisure Mutual Ins. Co.*, 2008 WL 859018 (E.D.N.C. March 31, 2008).

### 3.    A Majority Of Jurisdictions Support Amerisure's Position That Construction Defects Are Not An "Occurrence."

A majority of other jurisdictions deciding this issue have held that faulty workmanship standing alone, resulting in damage only to the work product itself, does not constitute an occurrence under a CGL policy.[2]

---

[2] *Amerisure v. Wurster Const., See e.g. Mello Constr. Co. v. Acadia Ins. Co.*, 2007 WL 2908267 No. 06-P-100 at *3 (Mass. App. Ct. Oct. 5, 2007)(holding that defective work was not an accident and thus not an occurrence); *Stanley Martin Cos., Inc. v. Ohio Cas. Group*, No. 1:06cv1035(JCC) (E.D.Va. Oct. 2, 2007)(Virginia law); *Lennar Corp. v. Auto-Owners Ins. Co., No.* cv 03-0451, 2007 WL 152099 at *4, (Ariz. App. Div. 1   Jan. 23, 2007); *American Home Assur. Co. v. AGM Marine Contractors, Inc.*, 379 F. Supp. 2d 134, 136, (D. Mass. 2005), aff'd, 467 F.3d 810 (1st Cir. 2006); *Viking Const. Management, Inc. v. Liberty Mut. Ins. Co.*, 831 N.E.2d 1, 6 (1st Dist. 2005) *Hotel Roanoke Conference Center Com'n v. Cincinnati Ins. Co.*, 303 F. Supp. 2d 784, 786, (W.D. Va. 2004), aff'd, 119 Fed. Appx. 451 (4th Cir. 2005) ("The word 'accident' as used in the definition of occurrence involves a degree of fortuity not present when the insured's defective performance of a contract causes injury to the insured's own work or product." Coverage also did not exist because of the "expected" damage exclusion. "(W)hen the insured poorly performs its contractual obligations damaging only the insured's work or product, the resulting contractual liability is 'expected'"); *Corder v. William W. Smith Excavating Co.*, 556 S.E.2d 77, 83-84 (2001) ("(C)ommercial liability policies are not designed to cover poor workmanship. Poor workmanship, standing alone, cannot constitute an 'occurrence.'"); *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 583 (6th Cir. 2001) (Kentucky law) (No "coverage where the damages claimed are the cost of correcting the work itself." "There is no occurrence (as to) property damage arising out of defective or faulty craftsmanship"); *State Farm Fire and Cas. Co. v. Tillerson*, 777 N.E.2d 986, 991 (5th Dist. 2002) ("Where the defect is no more than the natural and ordinary consequences of faulty workmanship, it is not caused by an accident.... (There must be an) unforeseen or undesigned, sudden, or unexpected event... (as opposed to) improper construction techniques in failing to properly compact the soil and in failing to fill or remove a cistern under the ground, prior to construction"—which resulted in uneven settling and resulting damage); *DCB Const. Co., Inc. v. Travelers Indem. Co. of Illinois*, 225 F. Supp. 2d 1230, 1231, (D. Colo. 2002) ("The risk that an owner might reject performance as inadequate is a 'business risk' allocated by parties in contract, and is insured by a performance bond, not general liability insurance for injuries or damage resulting from 'accidents'"); *Indiana Ins. Co. v. Hydra Corp.*, 245 Ill.App.3d 926, 185 Ill. Dec. 775, 778, 615 N.E.2d 70, 73 (1993) (holding that cracks on the surface of concrete flooring were not accidental, but instead "the natural and ordinary consequence of installing concrete flooring and applying the wrong type of paint"); *R.N. Thompson & Associates, Inc. v. Monroe Guar. Ins. Co.*, 686 N.E.2d 160, 165 (Ind.Ct.App.1997); *American Mfrs. Mut. Ins. Co. v. Seco/Warwick Corp.*, 266 F. Supp. 2d 1259, 1267-68 (D. Colo. 2003); *Nas Sur. Group v. Precision Wood Products, Inc.*, 271 F. Supp. 2d 776, 781-83 (M.D. N.C. 2003) (South Carolina law); *Jakobson Shipyard, Inc. v. Aetna Cas. and Sur. Co.*, 961 F.2d 387, 389, (2d Cir. 1992) (New York law); *McAllister v. Peerless Ins. Co.*, 474 A.2d 1033, 1036 (1984) ("The fortuity implied by reference to accident or exposure is not what is commonly meant by a failure of workmanship"); *Hawkeye-Security Ins. Co. v. Vector Const. Co.*, 185 Mich. App. 369, 460 N.W.2d 329, 334 (1990) ("we hold that the defective workmanship of [the insured], standing alone, was not the result of an occurrence"); *U.S. Fidelity & Guar. Corp. v. Advance Roofing & Supply Co., Inc.*, 788 P.2d 1227, 1233 (Ct. App. Div. 1 1989): ("We recognize that there are some authorities that appear to conclude that the mere showing of faulty work is sufficient to bring a claim for resulting damages (of whatever nature) within policy coverage.... In our opinion these authorities disregard the fundamental nature of a comprehensive general liability policy of the type involved in this litigation, and ignore the policy requirement that an occurrence be an accident. If the policy is construed as protecting a contractor against mere faulty or defective workmanship, the insurer becomes a guarantor of the insured's performance of the contract, and the policy takes on the attributes of a performance bond. We find these authorities unpersuasive. In our opinion, the better reasoned authorities hold that mere faulty workmanship, standing alone, cannot constitute an occurrence as defined in the policy...."); *Solcar Equipment Leasing Corp. v.*

Amerisure's position that CBI's faulty work is not an "occurrence" giving rise to its duty to defend is consistent with the law in Alabama (based on the *Warwick* case) and vast majority of courts around the country. Because faulty work is not an "occurrence" in Alabama, no coverage exists for the Four Winds' or Clearwater's claims for construction defects by CBI. Therefore, Amerisure does

---

*Pennsylvania Manufacturers' Ass'n Ins. Co.*, 606 A.2d 522, 524 (1992); *Reliance Ins. Co. v. Mogavero*, 640 F. Supp. 84, 86 (D. Md. 1986); *Diamond State Ins. Co. v. Chester-Jensen Co., Inc.*, N.E.2d 1083, 1091–92 (1st Dist. 1993); *Lewis v. Easley*, 614 So. 2d 780, 782 (La. Ct. App. 2d Cir. 1993) ("no occurrence or accident transpires where the liability of the contractor depends solely on improper construction or faulty repair work"); *Swarts v. Woodlawn, Inc.*, 610 So. 2d 888, 890 (La. Ct. App. 1st Cir. 1992); *Indiana Ins. Co. v. Hydra Corp.*, 615 N.E.2d 70, 73 (2d Dist. 1993); *MCO Environmental, Inc. v. Agricultural Excess & Surplus Ins. Co.*, 689 So. 2d 1114, 1116 (Fla. Dist. Ct. App. 3d Dist. 1997) (damages caused by defective and shoddy workmanship are not caused by an accident/occurrence); *R.N. Thompson & Associates, Inc. v. Monroe Guar. Ins. Co.*, 686 N.E.2d 160, 164–65 (Ind. Ct. App. 1997); *Gibson & Associates, Inc. v. Home Ins. Co.*, 966 F. Supp. 468, 475 (N.D. Tex. 1997); *Pursell Const., Inc. v. Hawkeye-Security Ins. Co.*, 596 N.W.2d 67, 71 (Iowa 1999) ("defective workmanship standing alone, that is, resulting in damages only to the work product itself, is not an occurrence"); *Wm. C. Vick Const. Co. v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 52 F. Supp. 2d 569, 584–86 (E.D. N.C. 1999), aff'd, 213 F.3d 634 (4th Cir. 2000); *Erie Ins. Property and Cas. Co. v. Pioneer Home Improvement, Inc.*, 526 S.E.2d 28, 33-34 (1999); *Courtland Custom Homes, Inc. v. Mid-Continent Cas. Co.*, 395 F. Supp. 2d 478, 486 (S.D. Tex. 2005) (poor construction does not constitute an accident); *Jim Barna Log Systems Midwest, Inc. v. General Cas. Ins. Co. of Wisconsin*, 791 N.E.2d 816, 824-826 (Ind. Ct. App. 2003).

*See also L-J, Inc. v. Bituminous Fire and Marine Insurance Company* 621 S.E.2d 33, 35 (S.C. 2005)(holding that the Court of Appeals erred in finding that the road deterioration constituted an "occurrence" under the CGL policy.) The South Carolina Supreme Court also noted that:

> The issue of whether property damage to the work product alone, caused by faulty workmanship, constitutes an occurrence is a question of first impression in South Carolina. A majority of other jurisdictions deciding this issue have held that faulty workmanship standing alone, resulting in damage only to the work product itself, does not constitute an occurrence under a CGL policy. *See, e.g., Pursell Constr., Inc. v. Hawkeye-Security Ins. Co., 596* N.W.2d 67, 71 (Iowa 1999); *Amerisure, Inc. v. Wurster Constr. Co., Inc.,* 818 N.E.2d 998, 1004 (Ind.Ct.App.2004) (holding that faulty workmanship is not an accident and therefore not an occurrence); *Heile v. Herrmann,* 136 Ohio App.3d 351, 736 N.E.2d 566, 568 (1999) (holding that faulty workmanship does not constitute an occurrence when the damage is to the work product only); *Monticello Ins. Co. v. Wilfred's Constr.,* 277 Ill.App.3d 697, 214 Ill. Dec. 597, 661 N.E.2d 451, 456 (1996) (finding that improper construction by a contractor and its subcontractors does not constitute an occurrence when the improper construction leads to defects).

In *Glendenning's Limestone & Ready-Mix Co., Inc. v. Reimer,* 721 N.W.2d 704 (Wis. App. 2006)the court concluded that "faulty workmanship in itself is not an 'occurrence'-that is, 'an accident'-within the meaning of the CGL policy. An 'accident' may be caused by faulty workmanship, but every failure to adequately perform a job, even if that failure may be characterized as negligence, is not an 'accident,' and thus not an 'occurrence' under the policy." *Reimer,* at 716. To be sure, the *Reimer* Court went on to explain that "the stalls not being built according to specifications, the irregularly installed stall loops and the loose, irregular and unattached neck bars were not caused by an 'occurrence.' *Id.,* 716. The only cause alleged for these is the negligent work of the subcontractors and that, as we have held above, does not, in itself, constitute an 'occurrence.'" *Id.*

not owe any contribution to Plaintiff for its voluntary payment of claims for CBI's allegedly defective work. As such, Amerisure is entitled to summary judgment.

### 4.    CGL Policies Are Not Performance Bonds

At risk of stating the obvious, A CGL policy is not a performance bond. For some reason this concept is not always easily embraced. Here's a good explanation: "If the policy is construed as protecting a contractor against mere faulty or defective workmanship, the insurer becomes a guarantor of the insured's performance of the contract, and the policy takes on the attributes of a performance bond." *Bogner Construction v. Field & Assoc., Inc.*, 2009 WL 91300 *5, (Ohio App. 2009). "Faulty workmanship is not an accident; instead, it is a foreseeable occurrence, and performance bonds exist in the marketplace to insure the contractor against claims for the cost of repair or replacement of faulty work." *Lexicon, Inc. v. Ace Am. Ins. Co.* 2010 WL 79479, *4 (E.D. Ark. 2010). "The performance bond is the proper instrument for protection against financial loss arising from the repair and remediation of defective construction. It protects the general contractor to the extent of his or her work, irrespective of whether subcontractors performed certain aspects of that work." *Lexicon*, at 4. Amerisure just wants to drive home an additional point in its request for summary judgment: a performance bond – and not a liability policy – is the proper avenue of recovery for error-laden construction.

**D. AMERISURE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE UNDERLYING LAWSUITS WERE FOR DAMAGE TO THE BUILDINGS THEMSELVES-WHICH IS CBI'S OWN WORK- AND THE AMERISURE POLICY EXPLICITLY EXCLUDES PROPERTY DAMAGE TO THE INSURED'S OWN WORK FROM COVERAGE.**

There are no allegations of "property damage" in the underlying actions that would trigger coverage under the Amerisure policy. Rather, the underlying actions only allege damage to the buildings themselves. The Four Winds and Clearwater buildings are CBI's own work. And, as the general contractor of both projects, CBI's work consisted of the entire buildings. Therefore, any damage to *any* part of the buildings as a result of faulty workmanship would be damage to CBI's work, and not covered.

Amerisure's policy –like all CGL's[3]– has a "business risk" (a.k.a. "your work") exclusion that excludes coverage for "property damage" to the insured's own work. More specifically, EXCLUSION "J." provides that the insurance does not apply to " '[p]roperty damage' to ... (5) [t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or ... (6) [t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." And

---

[3] "The primary purpose of this exclusion to prevent liability policies from insuring against an insured's own faulty workmanship, which is a normal risk associated with operating a business. Accordingly, where all of the damage that is being claimed is damage to the work of the insured which is caused by the work of the insured, the "your work" exclusion will apply to preclude coverage." 9A Couch on Ins. § 129:17 (footnotes and citations omitted.)

exclusion "L." similarly excludes coverage for damage to Structural Masonry's own work; it states there will be no coverage for:

### L.   DAMAGE TO YOUR WORK

"PROPERTY DAMAGE" TO "YOUR WORK" ARISING OUT OF IT OR ANY PART OF IT AND INCLUDED IN THE "PRODUCTS-COMPLETED OPERATIONS HAZARD".

In the underlying lawsuits, CBI was being sued for costs associated with repairing and replacing its faulty workmanship. So Amerisure does not owe coverage for the costs of repair sought in the underlying lawsuits since they are excluded under the Policy's "business risk" exclusions. *See Centennial Ins. Co. v. Cummins Alabama, Inc.*, CIV.A. 91-0452-B-S, 1992 WL 12147608 (S.D. Ala. Feb. 27, 1992)(holding "your work" exclusion in subject CGL policy precludes coverage for property damage to insured's work (in that case, an engine.))

In *Berry v. South Carolina Ins. Co.*, the Alabama Supreme Court interpreted an almost identical CGL policy "your work" exclusion to preclude coverage of an underlying claim against the insured builders stemming from their defective construction of a roof. 495 So. 2d 511, 513 (Ala. 1985). The *Berry* Court held that the damage to the family's home caused by the builders' failure to complete construction of a roof did not result from an accident, including continuous or repeated exposure to conditions, but rather, was related to work done pursuant to the contract, and thus, the CGL insurer was not obligated to defend or indemnify the builders. *Id.* at 513. The *Berry* Court was faced with facts practically identical

to those at bar: the only damage was to the insured builder's work itself caused by
its own faulty workmanship. *Id.* at 512-513. And the *Berry* Court affirmed
summary judgment against the insured builders because the policy specifically
excluded the alleged damage in its "work product exclusion,'" which stated:

> This insurance policy does not apply to property damage to work
> performed by or on behalf of the named insured arising out of the
> work or any portion thereof, or out of materials, parts or equipment
> furnished in connection therewith.

*Berry* at 513.

Here, it is undisputed that the Four Winds and Clearwater claims for
"property damage" to the buildings themselves is alleged to have been caused by
CBI's faulty work done pursuant to the contract. Therefore, based on the *Berry*
decision, Amerisure is entitled to a summary judgment because the unambiguous
Exclusions "J." and "L." preclude coverage for claims of "property damage" to
CBI's work arising out of CBI's operations. *See also USF&G v. Bonitz*, 424 So.
2d 569 (Ala. 1982)("if damage to the roof itself were the only damage claimed by
the City of Midfield, the exclusion would work to deny Bonitz any coverage under
the USF&G policy."); *and Garrett v. Auto Owner's Insurance Company*, 689 So.
2d 179 (Ala. 1997)(holding that damage to the work itself is not covered under an
insurance policy, applying a very similar exclusion to a garage policy.) The "J."
and "L." business-risk exclusions are Amerisure's clear-language protection

against an insured's attempt to pervert the CGL policy into a performance bond. Since they squarely apply here, Amerisure is entitled to summary judgment.

## E. EVEN IF THE UNDERLYING ALLEGATIONS CONSTITUTED AN "OCCURRENCE" THAT CAUSED "PROPERTY DAMAGE" UNDER THE POLICY – WHICH THEY DO NOT—THE POLICY'S EXCLUSIONS PRECLUDE COVERAGE.

### 1. Expected Injury is excluded from coverage under the policy

Four Winds and Clearwater entered into contracts with CBI for construction work to be performed on the buildings. The parties expected that damage would be caused to the buildings as a natural consequence of any faulty construction. How could they not? The CGL policy serves to protect the insureds from *unexpected* and *unintended* damages resulting from unplanned liability (i.e. falling tools injuring people or property) –not the failure of CBI to fulfill its contractual duties. Again, that's what a performance bond is for. Therefore, coverage for the claims sought in the underlying lawsuits are excluded under the policy's Expected or Intended Injury Exclusion (listed as Exclusion "A.") which reads as follows:

EXPECTED OR INTENDED INJURY

"BODILY INJURY" OR "PROPERTY DAMAGE" EXPECTED OR INTENDED FROM THE STANDPOINT OF THE INSURED. THIS EXCLUSION DOES NOT APPLY TO "BODILY INJURY" RESULTING FROM THE USE OF REASONABLE FORCE TO PROTECT PERSONS OR PROPERTY.

CGL insurers exclude expected or intentional damages from coverage because they are not actuarially random, but entirely under the control of the insured. "Expected harm" is not the same as "feared harm" with which normal actuarial calculations are designed to deal.

### a.    Damage from faulty workmanship is an "expected" injury. So it is excluded from coverage under the policy.

A builder with CBI's experience cannot claim that damages resulting from faulty construction are surprising or unexpected.   Here, CBI is a professional builder so it "subjectively possessed a high degree of certainty" that injury to the Building would result if it improperly performed the work.  *See, e.g., State Farm Fire & Cas. Co. v. Chestang,* 952 So. 2d 1101, 1104-05 (Ala. 2006) (construing and applying explicit policy exclusion for damage "which is either expected or intended by the insured"); *Continental Cas. Co. v. Plantation Pipe Line Co.,* 902 So. 2d 36, 42-43 & n. 5 (Ala. 2004) (applying policy exclusion for bodily injury or property damage that was "expected or intended from the standpoint of the insured").[4]   Therefore, damage to the construction work of the Building was "expected" by CBI and precluded under exclusion "A."

### 2.    Contractual Liability is excluded from coverage under the policy.

The underlying lawsuits are basically big breach-of-contract actions concerning construction contracts.  Four Winds and Clearwater both sued CBI for breach of contract/ warranty.  All of the claims are disallowed from coverage under Exclusion "B.", CONTRACTUAL LIABILITY, which excludes: "BODILY INJURY" OR "PROPERTY

---

[4] *Chestang* and *Plantation Pipe* were barely distinguished in  *Caribbean I Owners' Ass'n, Inc. v. Great Am. Ins. Co. of New York,* 600 F. Supp. 2d 1228, 1250 at n. 25 (S.D. Ala. 2009)(the court noted, however, that these two cases were "inapposite, inasmuch as Great American does not rely on any "expected or intended loss" language in the Policy itself, but instead predicates its "expected loss" argument solely on a legal doctrine extrinsic to the Policy.) And here, quite obviously, Amerisure has specific intrinsic policy language that it is relying on.

DAMAGE" FOR WHICH THE INSURED IS OBLIGATED TO PAY DAMAGES BY REASON OF THE ASSUMPTION OF
LIABILITY IN A CONTRACT OR AGREEMENT.....

The Middle District recently interpreted an identical exclusion to hold that
the insurer owed no duty to defend its insured builder who was sued for breaching
his construction agreement.   *See Hermitage Ins. Co. v. Champion*, CIVA
2:09CV398-MHT, 2010 WL 1711049 (M.D. Ala. Apr. 27, 2010)(the subject CGL
policy's exclusion provided that insurance coverage "does not apply to ... 'Bodily
injury' or 'property damage' for which the insured is obligated to pay damages by
reason of the assumption of liability in a contract or agreement." Thus, the Court
held that the insurer had no duty to defend the builder as to the homeowner's
breach-of-contract claim.)   The *Champion* case shows Amerisure's contractual
liability exclusion ("B.") is unambiguous and enforceable under Alabama law.
Therefore, Amerisure is entitled to summary judgment because it owed no duty to
defend CBI for the breach of contract or indemnity claims asserted against it in the
underlying lawsuits.

## VI.   CONCLUSION

Amerisure does not owe Plaintiff contribution because Plaintiff's subrogor
(CBI) was never entitled to coverage under its Policy with Amerisure. Amerisure
never owed a duty to defend or pay in the underlying lawsuits because:  1) CBI
breached its agreement with Amerisure by withholding notice of the lawsuits for 3
and 4 years, respectively;  2) CBI knew of the claims prior to Amerisure's policy

period so they are not covered; 3) There has been no "occurrence" that would trigger coverage under the Policy; 4) There is no claim for "property damage" that would trigger coverage under the Policy; and 5) The Policy's exclusions preclude coverage. There are no genuine issues of material fact and Amerisure is entitled to Judgment as a Matter of Law.

WHEREFORE, PREMISES CONSIDERED, Amerisure requests this Honorable Court to enter Summary Judgment in its favor and against Plaintiff as to all claims.

Respectfully submitted, this the 19th day of January, 2011.

Kile T. Turner, asb-8182-u83k
William H. McKenzie, IV, asb-8841-M70M
**Attorneys for Defendant, Amerisure**
**Mutual Insurance Company**

OF COUNSEL:
Norman, Wood, Kendrick & Turner
Financial Center - Suite 1600
505 20th Street North
Birmingham, Alabama 35203
Telephone: (205) 328-6643
Fax: (205) 251-5479
Emails: kturner@nwkt.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the e-file system and that I have served a copy of the foregoing electronically or by placing a copy of same in the U. S. Mail, postage prepaid and properly addressed on this the 19th day of January, 2011, as follows as directed by the court:

Helen J. Alford, Esq.
J. Richard Moore, Esq.
Alford, Clausen & McDonald, LLC
One St. Louis Centre, STE 5000
Mobile, AL 36602

/s/Kile T. Turner
Of Counsel