# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| ASSURANCE COMPANY OF AMERICA, individually and as subrogee of its insured, Coastal Builders, Inc., | * * * * * | |
| | * | NO. 10-112 |
| Plaintiff, | * * | |
| vs. | * * | |
| AMERISURE MUTUAL INSURANCE COMPANY, | * * * | |
| Defendants. | * | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff Assurance Company of America, by and through its undersigned counsel of record, and respectfully files its Response in Opposition to Defendant's Motion for Summary Judgment as follows:

## I. DEFENDANT'S NOTICE OF CLAIMS

Plaintiff concedes that in the "perfect world" which Defendant posits in the introduction to its Brief in Support of Summary Judgment, all interested parties, including contractual indemnitors, would have instantaneous notice of claims which trigger their legal duties. As we know, and as the facts of this case demonstrate, the world is not perfect in this respect. Fortunately, Alabama law provides guidance on the issue of timely notice. Alabama law provides that where

a liability insurance policy like Defendant's provides that notice of a claim must be given "as soon as practicable," that means notice must be given "within a reasonable time" in view of all the facts and circumstances of the case. *Southern Guar. Ins. Co. v. Thomas*, 334 So.2d 879, 882 (Ala. 1976). To determine whether the lapse of time between the insured's awareness of a claim and notice to the insurer is reasonable, the Alabama Supreme Court has stated that it "traditionally" considers two factors: the length of the delay and the reasons for the delay. *Big Three Motors, Inc. v. Employers Ins. Co. of Alabama*, 449 So.2d 1232, 1235 (Ala. 1984), quoting *Southern Guaranty Ins. Co. v. Thomas*, *supra* at 882.

For the purposes of summary judgment, Plaintiff agrees that there is no dispute as to the elapse of time between Coastal Builders, Inc.'s awareness of the claims asserted in the two lawsuits against it---just over three years for the Four Winds Lawsuit and over four years for the Clearwater Lawsuit. However, that delay did not result from any dilatory conduct on the part of Coastal Builders, Inc. or Plaintiff.

Plaintiff's claim file reflects that on April 4, 2003, an attorney for Clearwater Condominium Association, Inc., sent a copy of the Clearwater Lawsuit to Coastal Builders, Inc. **See attached Second Affidavit of Pam Pistorius.** A facsimile cover sheet dated April 9, 2003, reflects that on that day, Coastal Builders forwarded the attorney's letter to Dave Orsland at Willis Claim Service Center.

**Second Affidaivit of Pam Pistorius**.  On April 16, 2003, Mr. Orsland sent a loss notice report regarding the claim to Assurance Company of America.  In the report, Mr. Orsland noted that the lawsuit did not allege a specific date of loss, and that Willis did not handle Coastal Builders, Inc.'s policy renewals after 2002.  Mr. Orsland provided information about Coastal Builders, Inc.'s coverages from 1997 through November 1, 2002, when the Assurance policy ended.  **Second Affidaivit of Pam Pistorius**.  Plaintiff assigned counsel to defend Coastal Builders, Inc., on April 22, 2003.  **Second Affidaivit of Pam Pistorius**.

Defense counsel appointed by Plaintiff was already defending Coastal Builders, Inc., when the lawsuit was filed.  Plaintiff formally assigned the same attorneys to defend Coastal Builders, Inc., in the Four Winds Lawsuit.  **Second Affidaivit of Pam Pistorius**.

Thereafter, Assurance Company of America was focused on defending Coastal Builders, Inc., in the lawsuits.  At the outset and from the face of the lawsuit, it was not readily apparent to Assurance Company of America when the acts and/or occurrences which might give rise to liability on the part of Coastal Builders, Inc., took place, or whether Coastal Builders, Inc. had additional coverage after Assurance Company of America's coverage ended.  **Second Affidaivit of Pam Pistorius**.  As the parties began to consider settlement and mediation, Assurance Company of America concluded that the lawsuits alleged

claims which extended well past its coverage period, and into the period in which Amerisure Mutual Insurance Company provided commercial general liability coverage for Coastal Builders, Inc. **Second Affidaivit of Pam Pistorius**.

On May 18, 2007, Assurance Company of America learned that Coastal Builders, Inc. had insurance through Amerisure Mutual Insurance Company from 2002 to 2006. Thereafter, Assurance Company of America made diligent efforts to see that Amerisure Mutual Insurance Company was notified of the lawsuits and given an opportunity to participate in Coastal Builders, Inc.'s defense and indemnity. **Second Affidaivit of Pam Pistorius**.

In asserting that the delay in formal notice to Defendant was unreasonable here, Defendant points to Alabama decisions in which the Alabama Supreme Court concluded that much shorter delays were unreasonable. Each of these cases is distinguishable from the case at bar. In *Southern Guar. Ins. Co. v. Thomas*, 334 So.2d 879 (Ala. 1976), the insured strung a wire across a trail to discourage trespassers, and a motorcyclist struck the wire and was injured. Two days later, the insured received a letter from an attorney making a claim against him for the cyclists' personal injuries. The insured's personal attorney advised him to investigate whether his homeowners insurance policy would cover the claim, but the insured did not report the claim to his insurer, nor have his attorney review the policy at that time. Only after suit was filed, some six months later, did the insured

4

actually take the homeowners policy to his lawyer, whereupon the insurer was notified of the claim. In giving reasons for his delay, the insured stated that it was his personal belief (notwithstanding his failure to have his attorney review the policy) that the policy did not apply; that he did not believe he was personally liable for the acts giving rise to liability; and that, even though he had received a letter from an attorney for the claimant asserting the claim, he did not believe any suit would actually be filed. The Alabama Supreme Court found these "excuses" to be unreasonable. *Id.* at 884-85.

By contrast, here Coastal Builders, Inc., took prompt steps to put applicable insurance carriers on notice. Unlike the "single incident" alleged in *Thomas*, the Clearwater Lawsuit and the Four Winds Lawsuit may each be read to allege a series of "hands-on" building insufficiencies, as well as ongoing conduct and behavior on the part of Coastal Builders, Inc., which is not limited to a single event or instantaneous occurrence. The insured's claims service engaged in a reasonable effort to identify and notify appropriate insurers. Coastal Builders, Inc., was provided a complete defense by Plaintiff, and had no reason to further consider or investigate whether other insurers should be involved in its defense. Plaintiff was engaged in providing that defense and investigating the claims, and took steps to place Defendant on notice upon being reasonably convinced that the claims extended past its coverage period, and upon learning of Defendant's coverage

periods.

The two other cases cited by Defendant are distinguishable from the facts of this case. In *Pharr v. Continental Cas. Co.*, 429 So.2d 1018 (Ala. 1983), the insured delayed almost eight months in giving its insurer notice of the lawsuit filed against it. The insured offered **no reasons** to explain the length of the delay. Accordingly, summary judgment was entered against the insured. *Id.* at 1019-20. Similarly, in *B&M Homes, Inc. v. American Liberty Ins. Co.*, 356 So.2d 1195 (Ala. 1978), the insured offered no reasons for a seven-month delay in giving notice, and summary judgment was accordingly entered against it. *Id.* Here Plaintiff has offered reasons explaining the delay of notice to Defendant, and these holdings therefore do not apply.

Other cases in which the Alabama Supreme Court found a delay in notice to be unreasonable are similarly distinguishable from the facts here. In *Big Three Motors, Inc. v. Employers Ins. Co. of Alabama*, 449 So.2d 1232 (Ala. 1984), the insured only gave notice to the liability insurer some three and one-half years after the accident giving rise to liability, and only **after judgments were entered against the insured.** The Alabama Supreme Court was not impressed with the contention that the insured simply "did not know" about the policies until after the trial and judgment. *Id.* at 1235-36.

Similarly, in *Correll v. Fireman's Fund*, 529 So.2d 1006 (Ala. 1988), there appeared to have been some collusion between the insured and the underlying claimant. The claimant had initially sued the insured for conduct which did not sufficiently allege "negligent acts, errors, or omissions," and accordingly did not trigger coverage under the liability policy in question. A notice of appeal on that issue was filed on October 9, 1985, and the Alabama Supreme Court remanded the case on November 14, 1986. *See Correll v. Fireman's Fund Inc. Co.*, 505 So.2d 295 (Ala. 1986). In the meantime, on April 29, 1986, in an apparent effort to trigger liability insurance coverage, the underlying claimant amended the complaint to add an allegation of negligent conduct. The claimant and the insured filed a consent judgment on May 1, 1986; and on May 8, 1986, they filed an agreement to satisfy the judgment whereby a payment schedule and conditions were set forth, **all of which, including the amendment to the complaint, was done without notice to the insurer.** 529 So.2d at 1007. Only on April 14, 1987, nearly a year later, after final order on the appeal, did the insured's counsel send a letter to the insurer enclosing copies of the documents and demanding that the insurer pay. *Id.*

The insured in *Correll* contended that the lack of notice to the insurer should have been deemed reasonable because the insurer had already refused to defend them; because the underlying cases were settled within seven days of the

amendment; and because the insurer received notice of the amendment and settlement within 17 days of the Alabama Supreme Court's final ruling in the first appeal. The Court rejected the insured's argument. As to the original notice, the Court concluded that this was for different, non-covered (*i.e.,* non-negligence-based) claims. As to the second and third reasons given by the insured for the delay in notice, the Court appeared to suspect collusion:

> Moreover, the fact that the plaintiffs voluntarily chose to negotiate a settlement, then seek and obtain a consent judgment, and then enter into an agreement thereon with the plaintiffs in the underlying actions could not unilaterally operate to abrogate Fireman's Fund's right under the policy to receive notice from the insured of any claim against the insured. "Clearly, an insured cannot hold an insurer liable for a settlement as a penalty for failure to defend ***where no one called upon the insurer to do so [by giving notice***]." 7C Appleman, *supra,* § 4690 at 237. (Emphasis added).

*Id.* at 1010.

In this case, by contrast, Plaintiff gave Defendant ample opportunity to assist in the defense of Coastal Builders, Inc., well before the entry of any judgment or settlement. In response, Defendant simply shut down and refused to communicate further (with Plaintiff, at least) with respect to its obligation to defend and indemnify Coastal Builders, Inc. Defendant urges the Court that under Alabama law, it should not consider whether Defendant was prejudiced by the delay in

notifying it of the two lawsuits.[1]  Nonetheless, Defendant implies that the Court

should in fact deem it to have been prejudiced, by arguing, "Here, there is no

reason for the delay---apparently CBI and Plaintiff did not think it was important to

give Amerisure a chance to protect its rights."  See page 6 of Defendant's Brief in

Support of Summary Judgment.  In fact, Defendant was in no way prejudiced by

the delay.  The parties' shared insured received a full and complete legal defense,

was not subject to a judgment, and was protected from further claims by

reasonable settlements.  Defendant was notified of the two claims well before any

substantive settlement discussions began.

The admitted delay in providing notice to Defendant of the Clearwater

Lawsuit and the Four Winds Lawsuit demonstrates that the parties do not enjoy the

"perfect world" imagined by Defendant.  However, the delay in notice was not

---

[1] Plaintiff acknowledges that Alabama law provides support for Defendant's contention that as a primary insurer, Defendant is not obligated to prove prejudice in order to escape its defense and indemnity obligations based on untimely notice.  On the other hand, the Alabama Supreme Court has noted, "The rationale for not requiring a showing of prejudice is based on the premises that a primary insurer must have timely notice in order to form an intelligent estimate of its rights and liabilities, to afford it an opportunity for investigation, to allow it to participate in the litigation and to prevent fraud."  *Midwest Employers Cas. Co. v. East Alabama Health Care*, 695 So.2d 1169, 1171 (Ala. 1997), quoting certified-question order from the United States District Court for the Middle District of Alabama.  The Alabama Supreme Court further noted, "A recent national survey of law has found Alabama law regarding a policyholder's notice to a primary insurer to be a minority position among the 50 jurisdictions." *Id.*, citing Barry R. Ostrager and Thomas R. Newman, *Handbook on Insurance Coverage Disputes,* § 4.04 (8th ed.1995).  Here Defendant was placed in contact with Coastal Builders, Inc.'s defense counsel and given the opportunity to investigate, to form an estimate of its own rights and liabilities, and to participate in the litigation.  Defendant denied itself these opportunities, and now seeks to avoid its contractual responsibility through its own inaction.

related to any dilatory or unexplained inaction by Coastal Builders, Inc., or Plaintiff. Coastal Builders, Inc., provided timely notice; Plaintiff diligently involved itself in preparing Coastal Builders, Inc.'s defense; and upon more fully assessing the scope of the claims asserted, concluded that Defendant should be notified of the claims. The delay, while certainly not ideal for any party, was reasonable, and should not justify releasing Defendant from its defense and indemnity obligations under its policy covering Coastal Builders, Inc.

## II. THE "KNOWN LOSS" PROVISION

### A. Coastal Builders, Inc.'s Alleged Knowledge

Defendant contends that the two lawsuit should be deemed "known losses" under Defendant's policy because they constituted "property damage" which was "known to the insured prior to [Defendant's] policy period." This contention is based exclusively on statements attributed to John Case of Coastal Builders, Inc., in claim notes prepared by a representative of Defendant, to the effect that Mr. Case "knew of complaints" related to the Four Winds Condominium, but never considered them to "be anything" until suit was filed; and similar statements attributed by Defendant's representative to Mr. Case to the effect that he "knew of problems" within two to three years of completion of the Clearwater Condominium in 1998 or 1999. Plaintiff objects to these hearsay statements attributed to Mr. Case, and incorporates by reference its Objection to Hearsay Submitted by

Defendant in Support of Defendant's Motion for Summary Judgment, filed contemporaneously herewith.

Even if the Court were to consider those statements in determining whether Coastal Builders, Inc., knew about the claims in the two lawsuits, the statements attributed to Mr. Case do not give rise to a reasonable inference that Coastal Builders, Inc., was aware of the full range of claims asserted in either lawsuit. With respect to the Four Winds Lawsuit, Mr. Case is attributed only with saying that any "defects or problems" were treated as warranty problems, and that these were "problems" with window seals and complaints regarding windows and doors which "came up 2-3 years after completion." The statements attributed to Mr. Case by no means evidence that Coastal Builders, Inc., was aware of any claims that it had engaged in negligent and/or wanton conduct, including failure to property design, install, inspect and/or specify components of the structure; failed to supervise and/or inspect construction; failed to properly install and/or apply materials; failed to reveal latent and/or other defects within the structure; and failed to warn after notice and/or discovery of improperly installed vertical and/or expansion joints, exterior cladding components, flashings and sealants, all of which were alleged in the Clearwater Lawsuit. Nor do the statements attributed to Mr. Case demonstrate that Coastal Builders, Inc. was aware that it had breached warranties and contractual agreements with respect to its work, or that it had

misrepresented and/or suppressed knowledge of improper installation of structural components, lack of vertical and/or expansion joints and improper waterproofing, all of which was also alleged in the Clearwater Lawsuit. At most, Mr. Case's hearsay statements may be understood as stating that he believed Coastal Builders, Inc., had addressed any concerns or complaints about its work on the Clearwater Condominium---and that there were no outstanding claims or complaints---until the Clearwater Lawsuit was served.

With respect to the Four Winds Lawsuit, Mr. Case is attributed only with saying that there were "issues" with some of the doors, railings and concrete; and that "they didn't consider any complaints of the owner anything but warranty complaints until suit was filed." The statements attributed to Mr. Case by no means evidence that Coastal Builders, Inc., was aware of any claims that it had engaged in negligent and/or wanton conduct, including failure to property design, install, inspect and/or specify components of the structure; failed to supervise and/or inspect construction; failed to properly install and/or apply the exterior cladding system and other materials; failed to reveal latent and/or other defects within the structure; or failed to warn after notice and/or discovery of improperly installed vertical and/or expansion joints, exterior cladding components, flashings and sealants, all of which was alleged in the Four Winds Lawsuit. Nor do the statements attributed to Mr. Case demonstrate that Coastal Builders, Inc. was

aware that it had breached warranties and contractual agreements with respect to its work, or that Coastal Builders, Inc., misrepresented and/or suppressed knowledge of improper installation of structural components, lack of vertical and/or expansion joints and improper waterproofing, as alleged in the Four Winds Lawsuit. Again, Mr. Case's hearsay statements may be understood as stating that he believed Coastal Builders, Inc., had addressed any concerns or complaints about its work on the Four Winds Condominium pursuant to the governing warranties, until the Clearwater Lawsuit was served.

Defendant cites the recent decision in *Harleysville Mut. Ins. Co. v. Dapper, LLC*, 2010 WL 2925779 (M.D. Ala. July 21, 2010) as supporting for its contention that Coastal Builders, Inc., knew about the Clearwater and Four Winds claims, and that the claims are therefore not covered under Defendant's policy. In *Dapper*, the evidentiary record showed clearly that Dapper knew, on dates certain three months before it renewed it liability insurance coverage, that the owner of property adjacent to Dapper's claimed that excavation on Dapper's property created erosion issues on the claimant's property. *Id.* at *6. The claimant subsequently filed a lawsuit on the claimed erosion damage. Because Dapper clearly knew that the adjacent property owner claimed erosion damage several months before Dapper renewed liability coverage, the court held that the claim was a known loss and not covered.

The specificity and clarity of Dapper's knowledge that there was an outstanding claim at the time coverage was renewed contrast heavily with the "knowledge" Defendant asserts Coastal Builders, Inc., had at the time Defendant's policy came into effect. The statements attributed to Mr. Case at most indicate that Coastal Builders, Inc., believed that any "issues" or "defects" had been addressed as warranty work, meaning that they had resulted in no actual damage. The statements certainly do not evidence knowledge of the kind of large-scale deficiencies and continuing damage asserted in the Clearwater Lawsuit and the Four Winds Lawsuit. Accordingly, the "known loss" provisions of Defendant's policy do not preclude coverage.

## B. The Timing of "Occurrences"

Defendant further contends that all "occurrences" giving rise to potential liability on the two lawsuits took place prior to Defendant's policy period. This conclusion is not supported by the factual record. As set forth in Plaintiff's Brief in Support of Motion for Summary Judgment, evidence submitted in the underlying lawsuits alleged continuing damage, well into Defendant's coverage period, relating to various failures in construction. Importantly, the lawsuits also both alleged not just defective construction work, but negligent and/or wanton failure on the part of Coastal Builders, Inc., to inspect the construction, detect problems and report and/or address them. Further, the expert reports indicate that damage

14

continued to manifest itself on a continuous basis well into Defendant's coverage period. These assertions demonstrate that while acts on the part of Coastal Builders, Inc., giving rise to potential liability may have taken place before Defendant's coverage period began, some or all of the alleged property damage involved repeated exposure to the same general harmful conditions which continued to "occur" well into Defendant's coverage period.

Defendant cites the case of *Home Indem. Co. v. City of Mobile*, 49 F.2d 659 (11th Cir. 1984) for the proposition that "if there are multiple 'occurrences' the inquiry centers on the faulty construction that causes the damage. *City of Mobile* supports no such conclusion. In fact, the Eleventh Circuit held in that case that under the policy in question in that case, "occurrence" meant that "each discrete act or omission, or series of acts or omissions, on the part of the City of Mobile which caused water to flood and damage properties instead of draining properly is a single 'occurrence' within the terms of the insurance policy." *Id.* at 663. This holding leaves open the possibility---the likelihood---of multiple "occurrences" in the course of Coastal Builders, Inc.'s dealings with the underlying claimants in the course of the two lawsuits[2].

---

[2] Defendant also states, "All the claims against CBI stemmed from its original faulty construction that took place prior to Amerisure's 2002 policy period." Defendant's Brief, p. 13. There is no support in the record for this statement, and the evidence designated by Plaintiff demonstrates that the underlying claimants alleged a range of acts in addition to "faulty construction" resulting in continuing damage well into Defendant's policy period.

Further, *City of Mobile* did not address the specific issue here, which is the timing of an "occurrence" with respect to what is covered. That question was addressed more directly by the Alabama Supreme Court in *Liberty Mut. Ins. Co. v. Wheelwright Trucking Co., Inc.*, 851 So.2d 466, 481 (Ala. 2002). In that case, the Court held that even though some of the acts which resulted in the loss of use of certain trailers took place as long as years before the claimant actually experienced loss of use of the trailers, the "occurrence" came about when the trailers failed and the claimant lost their use. *Id.* at 482. The Court cited the rule in Alabama that the time of "occurrence" of an accident within the meaning of an indemnity policy is not the time the wrongful act is committed, but the time the complaining party **was actually damaged.** *Liberty Mut. Ins. Co. v. Wheelwright Trucking Co., Inc.*, 851 So.2d 466, 481 (Ala. 2002), quoting *United States Fidelity & Guaranty Co. v. Warwick Development Co.,* 446 So.2d 1021, 1024 (Ala. 1984).

As previously noted, the evidence designated by Plaintiff in support of its own Motion for Summary Judgment demonstrates that the underlying claimants identified alleged damage which continued to manifest itself, *i.e.*, to occur, well into Defendant's policy period. Such claims are expressly covered under Defendant's policy.

## III. WHETHER THE CLAIMS AGAINST COASTAL BUILDERS WERE EXCLUSIVELY FOR "FAULTY WORKMANSHIP"

### A.  No "Occurrence"

Defendant contends that there was no "occurrence" because the only claims made against Coastal Builders, Inc., in the underlying lawsuits were for "faulty workmanship" arising exclusively out of Coastal Builders, Inc.'s work.  To be sure, there are allegations in the underlying lawsuits of inadequate construction. However, the lawsuits both also allege engaged other negligent and/or wanton conduct, including failure to reveal latent and/or other defects within the structure; failure to warn after notice and/or discovery of improperly installed vertical and/or expansion joints, exterior cladding components, flashings and sealants;  and misrepresentation and/or suppression of improper installation of structural components, lack of vertical and/or expansion joints and improper waterproofing. failure to property design, install, inspect and/or specify components of the structure.  Both lawsuits specifically alleged that the claimants had incurred costs related to "consequential damages," not merely limited to costs associated with repairing the buildings.  As demonstrated in the expert reports designated by Plaintiff in support of its motion for summary judgment, the claimants in both lawsuit submitted evidence alleging ongoing consequential damages including damage related to water intrusion resulting from Coastal Builders, Inc.'s alleged

acts and omissions. *See Moss v. Champion Ins. Co.*, 442 So.2d 26 (Ala. 1983) (water intrusion due to roof leak during course of ongoing construction constitutes "occurrence"); *USF&G v. Bonitz Insulation Co.*, 424 So.2d 569 (Ala. 1982) (claim against roof contractor for leaks resulting from faulty construction constituted an "occurrence" involving continuous or repeated exposure).

Defendant's argument regarding there being no covered occurrence is based on a limited view the allegations and evidence. The allegations and evidence do concern a component of "faulty workmanship," but are by no means restricted to such claims. It is apparent that a substantial portion of the damage claimed by the underlying claimants in both lawsuits relates to water intrusion. As alleged by the underlying claimants, these damages and other unspecified "consequential damages" resulted from the range of acts and omissions alleged against Coastal Builders, Inc. Accordingly, the mere fact that some portion of the claims against Coastal Builders, Inc., are related to "faulty workmanship" does not relieve Defendant its duty to defend and indemnify as to covered claims.

## B. No Covered "Property Damage"

Similarly, Defendant contends that all claims for damage against Coastal Builders, Inc., constitute damages for costs associated with "repairing and replacing its faulty workmanship," and are excluded by the "your work" provisions of the policy. Defendant cites *Berry v. South Carolina Ins. Co.*, 495 So.2d 511

(Ala. 1985) in support of this contention. In *Berry* the insured builder was sued for breach of contract, misrepresentation and breach of warranty based on a poorly-built home. However, in *Berry* the claimant admitted that there were no consequential damages other than damages related to the work done pursuant to the construction contract. *Id.* at 513. As previously noted, the claimants in both the Clearwater Lawsuit and the Four Winds Lawsuit specifically claimed additional consequential damages as a result of Coastal Builders, Inc.'s acts and omissions, including specifically widespread and continuing mold and water damage. Accordingly, the restrictions on coverage for "your work" in Defendant's policy do not relieve Defendant its duty to defend and indemnify as to covered claims.

## IV. <u>EXPECTED OR INTENDED INJURY</u>

Defendant advances no evidence demonstrating that Coastal Builders, Inc., expected or intended any injury to the claimants in the underlying lawsuits. Under Alabama law, whether an injury was expected or intended is analyzed from standpoint of the insured (Coastal Builders, Inc.), and injury will be deemed intended if the insured "possessed the specific intent to cause bodily injury to another." *State Farm Fire & Cas. Co. v. Chestang*, 952 So.2d 1101, 1105 (Ala. 2006). An injury will be deemed expected if the insured "possessed a high degree of certainty that bodily injury [or, presumably, property damage] to another would

19

result." *Id.* Defendant presents no affirmative evidence regarding Coastal Builders, Inc.'s subjective intent. Accordingly, Coastal Builders, Inc., should not be deemed to have or expected or intended the claimants' alleged damages.

## V. <u>CONTRACTUAL LIABILITY EXCLUSION</u>

Plaintiff acknowledges that the breach of contract exclusion in Defendant's policy may be read to exclude damages exclusively related to any breach by Coastal Builders, Inc., of specific duties under its contracts with the underlying claimants. However, as previously noted, the allegations in the underlying lawsuits are broader than the counts specifically related to breach of contract. The claimants in the lawsuits allege that Coastal Builders, Inc., engaged in a range of acts and omissions, including but not limited to insufficient workmanship, which resulted poorly-built structures as well as continuous occurrence of consequential damage to property. Admittedly some portions of those claims may not be covered, but, again, Defendant cannot be entirely relieved of its duties to defend and indemnify its insured because some components of the claims against Coastal Builders may be subject to limitation or exclusion under Defendant's policy.

In contending that the underlying claims are not covered under its policy, Defendant seeks to contract the scope of the claims into what seems to be their main focus or gravamen. That is insufficient to establish no coverage. Further, because Defendant elected not to participate in the defense and settlement of the

claims against Coastal Builders, Inc., Defendant is bound by the settlement on Coastal Builders, Inc.'s behalf, if Coastal Builders, Inc.'s potential liability can be shown. *Liberty Mut. Ins. Co. v. Wheelwright Trucking Co., Inc.*, *supra* at 481, quoting *Stone Building Co. v. Star Electrical Contractors, Inc.,* 796 So.2d 1076, 1090 (Ala.2000). Plaintiff has demonstrated Coastal Builders, Inc.'s potential liability for consequential damages well outside the scope of damage to Coastal Builders, Inc.'s work on Clearwater Condominium and Four Winds Condominium. Accordingly, Defendant is bound by the settlements on Coastal Builders, Inc.'s behalf.

## VI. <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is due to be denied.

Respectfully submitted,

*/s J. Richard Moore*

J. RICHARD MOORE (MOO072)
E-mail: jrm@alfordclausen.com
HELEN J. ALFORD (ALF002)
E-mail: hja@alfordclausen.com
Attorney for Plaintiff, Assurance Company
of America

OF COUNSEL:

ALFORD, CLAUSEN & McDONALD, LLC
One St. Louis Centre, Suite 5000
Mobile, Alabama 36602
(251) 432-1600
(251) 432-1700 (fax)

CERTIFICATE OF SERVICE

I hereby certify that on <u>February 9, 2011</u>, the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system which will send notification of such filing to the following:

Kile T. Turner, Esq.
Norman, Wood, Kendrick & Turner
Financial Center, Suite 1600
505 20th Street North
Birmingham, Alabama 35203

/s J. Richard Moore
COUNSEL